43 F.3d 290
 TRUST & INVESTMENT ADVISERS, INCORPORATED, Plaintiff-Appellant,
v.
Joseph H. HOGSETT, Secretary of State of Indiana, in his
official capacity and Miriam Smulevitz Dant,
Indiana Securities Commissioner,
individually and in her
official capacity,
Defendants-
Appellees.
 No. 93-2117.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 18, 1994.
Decided Dec. 19, 1994.
 
 1
 B. Keith Shake (argued), Thomas A. Withrow, and O. Wayne Davis, Henderson, Daily, Withrow & Devoe, Indianapolis, IN, for plaintiff-appellant.
 
 
 2
 John Thomas Roy and Richard E. Shevitz (argued), Office of the Atty. Gen., Indianapolis, IN, for defendants-appellees.
 
 
 3
 Before FLAUM, and ROVNER, Circuit Judges, and WILLIAMS, District Judge.*
 
 
 4
 ANN CLAIRE WILLIAMS, District Judge.
 
 
 5
 Plaintiff Trust & Investment Advisers, Inc. ("TIA"), an Indiana financial investment company, is the subject of an Indiana Securities Division ("Division") administrative proceeding. The Division seeks to revoke, or at least suspend, TIA's registration as an investment advisor with the Division because TIA allegedly failed to properly supervise the activities of Robert W. Rousey, one of its agents. Seeking to block the state proceeding, TIA filed this suit with the United States District Court for the Southern District of Indiana against Joseph H. Hogsett, Indiana's Secretary of State, and Miriam Smulevitz Dant, the Indiana Securities Commissioner, pursuant to Title 42 U.S.C. Section 1983.[1] In Count I of its complaint, TIA seeks a declaration that the defendants' actions in investigating and bringing the proceeding against TIA violated plaintiff's procedural due process rights and an injunction prohibiting further unconstitutional conduct. Count II is directed against Dant as an individual, seeking money damages for injuries resulting from her allegedly illegal efforts to revoke TIA's license.
 
 
 6
 The district court dismissed TIA's suit, finding that Dant was immune from damages liability under theories of qualified and absolute immunity, and that notions of comity and equity mandated the dismissal of TIA's claim for declaratory and equitable relief under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). TIA appeals, arguing that Dant is not entitled to either qualified or absolute immunity and that Younger abstention is improper because the state administrative proceeding was institutionally biased and Dant had impermissibly prejudged the case. The district court's dismissal of Count I is reversed and the case is remanded for further proceedings consistent with this opinion. The dismissal of Count II is affirmed.
 
 I. Background
 
 7
 Plaintiff TIA is a financial investment company headquartered in Indianapolis. As of December 31, 1991, TIA employed eight people and managed over $500,000,000 of its clients' assets. Defendant Hogsett is the Secretary of State of Indiana and under Indiana law is responsible for the direction and control of the Indiana Securities Commission. At all relevant times, defendant Dant was the acting Indiana Securities Commissioner. As Securities Commissioner, Dant was responsible for the administration of the Indiana Securities Act, Indiana Code Sec. 23-2-1 et seq., and the direction and control of the Division.[2]
 
 
 8
 In early November 1991, Dant initiated an official Division investigation into the conduct of Robert Rousey who then worked either as an independent contractor for TIA (according to TIA) or as a TIA employee (according to the defendants). According to the Division's administrative complaint, Rousey had offered and sold non-existent, preferred stock in Eli Lilly & Co. in a scheme to defraud several Indiana residents. Rousey was eventually convicted for his fraudulent activities, receiving a sentence of eight years.
 
 
 9
 In January 1992, Dant broadened her investigation to include TIA. The expanded investigation focused on whether TIA had properly supervised Rousey while he was affiliated with the company. Dant allegedly played an active role in the investigation, personally requesting and receiving information and documentary evidence from TIA. By February 1992, TIA and the Division had engaged in preliminary discussions about TIA's potential liability for Rousey's unchecked conduct. On February 18, 1992, as part of this dialogue, Dant wrote to TIA's counsel, allegedly informing him that her investigation had uncovered evidence establishing TIA's liability for failing to reasonably supervise Rousey's activities.[3]
 
 
 10
 The parties' preliminary settlement negotiations quickly broke down, and on March 5, 1992, the Division filed an administrative complaint against TIA and Rousey. The complaint was signed by Nancy Sweet, a Deputy Commissioner for the Division. Along with the complaint, TIA was served with an Order to Show Cause executed by the Division's Chief Deputy Commissioner Joan Moore Mernitz on defendant Hogsett's behalf. The Order stated that "grounds exist under the Indiana Securities Act, IC 23-2-1, to suspend or revoke the investment adviser registration of TIA ... and that this Order is in the public interest." The Order further provided that a hearing would be scheduled within 45 days of a written request from TIA. Shortly prior to the filing of the Division's complaint, Dant had informed TIA's counsel that in light of her involvement in the underlying investigation, she intended to appoint a hearing officer to preside over the Division's complaint.
 
 
 11
 On March 20, 1992, TIA filed the instant suit, seeking declaratory, injunctive, and monetary relief, as well as attorney's fees. Five days later, Dant appointed Raymond J. Hafsten, who is not employed by or otherwise affiliated with the Division, as an independent hearing officer. This March 25, 1992 Division Order purported to delegate to Hafsten the power to conduct a hearing and render a final determination on the Administrative Complaint.[4] Around this time, defendant Dant was quoted in several articles in Indiana newspapers discussing the administrative proceeding and the underlying investigation. On March 27, 1992, defendants filed their motion to dismiss TIA's suit. The motion was granted on April 8, 1993, 830 F.Supp. 463. This appeal followed.
 
 II. Standard of Review
 
 12
 Our review of the district court's dismissal of Count II on immunity grounds is clearly de novo. Maltby v. Winston, 36 F.3d 548 (7th Cir.1994). The applicable standard for our review of the district court's decision to abstain is somewhat more elusive. In A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n, 921 F.2d 118, 121 (7th Cir.1990), we suggested that the abuse of discretion standard governs our review of all abstention decisions. As defendants readily note, in at least one prior decision, we applied the abuse of discretion standard in the specific context of a Younger abstention. See Sekerez v. Supreme Court of Indiana, 685 F.2d 202, 204-05 (7th Cir.1982). More recently, however, we have held that when a district court has been asked to abstain under the principles enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), our review of its decision is de novo. Arkebauer v. Kiley, 985 F.2d 1351, 1357 (7th Cir.1993) (citing Gartrell Constr. Inc. v. Aubry, 940 F.2d 437, 441 (9th Cir.1991)).
 
 
 13
 We are not alone in our vacillation. Our survey of the law in other circuits reveals no clear consensus on the issue. The Third, Fourth, Tenth, and Eleventh Circuits apply an abuse of discretion standard. See O'Neill v. City of Philadelphia, 32 F.3d 785 (3d Cir.1994); Martin Marietta Corp. v. Maryland Comm'n Human Relations, 38 F.3d 1392 (4th Cir.1994); Ramos v. Lamm, 639 F.2d 559 (10th Cir.1980); Rindley v. Gallagher, 929 F.2d 1552 (11th Cir.1991). The Sixth Circuit, on the other hand, appears to review all abstention decisions de novo. Traughber v. Beauchane, 760 F.2d 673, 675-76 (6th Cir.1985). Finally, the Ninth Circuit has adopted a hybrid approach, applying a de novo review for abstentions under Younger, but an abuse of discretion standard for all other forms of abstention. See World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1080-81 (9th Cir.1987).
 
 
 14
 While mindful of the Supreme Court's general admonition to avoid drawing artificial distinctions among the various grounds for abstention,[5] we find that the Ninth Circuit's dual standard approach is the better rule. Unlike other forms of abstention, such as the Pullman doctrine, which explicitly vests the district court "with discretion to decline to exercise ... its jurisdiction," Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1881, 14 L.Ed.2d 50 (1965), application of the Younger doctrine is absolute. As the Supreme Court explained in Colorado River Water Conservation District v. United States, 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976), when a case meets the Younger criteria, the district court must abstain. A standard of review that asks us to review a lower court's decision for an abuse of discretion that simply does not exist is inappropriate. Our review of the lower court's decision to abstain here is therefore de novo. Accord Fresh Int'l Corp. v. Agricultural Labor Relations Bd., 805 F.2d 1353, 1356 n. 2 (9th Cir.1986).
 
 III. Analysis
 A. Abstention
 
 15
 Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246. As the Supreme Court observed in New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 368, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989), "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." This being said, courts have long recognized a few well defined classes of cases that fall outside the norm where abstention is not only permissible but expected. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny comprise one such class of cases.
 
 
 16
 In Younger, the Supreme Court held that absent extraordinary circumstances, federal courts must abstain from enjoining ongoing state criminal proceedings. Id. at 41, 91 S.Ct. at 749. One justification for abstention in these cases, the Court explained, is "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Id. at 43-44, 91 S.Ct. at 750. Perhaps more important, as the Court noted, are the notions of comity and federalism at the heart of our nation's delicate balancing act:
 
 
 17
 The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts.... What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Government, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.
 
 
 18
 Id. at 44, 91 S.Ct. at 750.
 
 
 19
 Although Younger involved a suit to enjoin a state criminal proceeding, the doctrine has since been expanded beyond state criminal prosecutions to various civil proceedings in state court implicating important state interests. New Orleans Public Service, 491 U.S. at 367-68, 109 S.Ct. at 2517-18 (citing Huffman v. Pursue Ltd., 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975); Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979)). It has also been applied to certain state administrative proceedings that are judicial in nature. See Middlesex County Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (lawyer disciplinary proceeding initiated by state ethics committee); Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (barring injunction against an ongoing sex discrimination proceeding before state civil rights commission). Over time, a three-part test has emerged for determining whether abstention under Younger is appropriate:
 
 
 20
 (1) the judicial or judicial in nature state proceedings must be on-going;
 
 
 21
 (2) the proceedings must implicate important state interests; and
 
 
 22
 (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges.
 
 
 23
 Middlesex County, 457 U.S. at 432, 102 S.Ct. at 2521; AFSME v. Tristano, 898 F.2d 1302, 1305 (7th Cir.1990).
 
 
 24
 TIA does not dispute the presence of the first two Younger elements. A judicial in nature administrative action is pending against TIA before the Indiana Securities Division, and as the district court recognized, the issues raised in the proceedings implicate Indiana's strong interests in regulating the investment in securities and protecting its citizens from securities fraud. TIA's argument below and now on appeal rests on its contention that the underlying state proceedings are inadequate to protect its constitutional rights. Finding that the district court did not fully address this issue and that the record on appeal is not sufficiently developed to allow us to decide the matter ourselves, we reverse the lower court's decision to abstain on Count I of TIA's complaint and remand for further proceedings consistent with this opinion.
 
 
 25
 A fundamental assumption underlying the Younger abstention doctrine is the presence of a competent state forum. Withrow v. Larkin, 421 U.S. 35, 44 n. 8, 95 S.Ct. 1456, 1464 n. 8, 43 L.Ed.2d 712 (1975); Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). When the state tribunal is deemed to be biased or to have otherwise prejudged the controversy, abstention in deference to the state proceeding under Younger is inappropriate. W.C.M. Window Co. v. Bernardi, 730 F.2d 486, 491 (7th Cir.1984); United Church of Medical Center v. Medical Center Comm'n, 689 F.2d 693, 697-98 n. 3 (7th Cir.1982).[6] In opposing the Younger abstention, TIA has levied two distinct charges of bias and prejudgment against the Division. TIA first claims that the Division is institutionally biased because of its indirect pecuniary interest in the outcome of its enforcement proceedings. TIA also claims that the Division has impermissibly prejudged the proceedings because Dant, its commissioner at the time, played an unusually active role in the underlying investigation. We address each claim in turn.
 
 
 26
 Almost forty years ago, the Supreme Court reaffirmed a simple but fundamental tenet of due process--"no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This rule applies to courts and administrative agencies alike. Gibson, supra (pecuniary interest of members of state optometry board in outcome of proceeding against competing optometrists rendered them incompetent to act as adjudicators). It is also sufficiently broad to encompass not only those adjudicators with significant, personal financial stakes in the outcome of their cases, but also those whose interests are indirect or somewhat less than substantial. United Church, 689 F.2d at 699-700.
 
 
 27
 Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), is instructive. In Ward, the petitioner had challenged the constitutionality of an Ohio procedure authorizing the mayor of a small town to adjudicate traffic offenses, the fines for which accounted for a significant portion of the municipality's budget. Id. at 57-58, 93 S.Ct. at 81-82. Although the mayor had no personal stake in the proceedings, the Court nevertheless upheld the challenge, explaining that the mayor's executive responsibility for the village's finances could have affected how he decided the cases before him:
 
 
 28
 "[T]he test is whether the mayor's situation is one which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused...."
 
 
 29
 Id. at 60, 93 S.Ct. at 83 (quoting Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). In so holding the Court was careful to distinguish its prior ruling in Dugan v. Ohio, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928) involving another Ohio mayor who held both executive and judicial responsibilities. Noting that the mayor in Dugan had only limited executive authority and fiscal responsibility, the Court explained that his relationship to the finances and financial policies of the city was too remote to warrant a presumption of bias. Ward, 409 U.S. at 60-61, 93 S.Ct. at 83-84.
 
 
 30
 One year later, in Gibson, supra, the Supreme Court upheld a district court's decision to enjoin an ongoing state administrative proceeding on similar grounds. In Gibson, a state optometric association charged nonmember optometrists with unprofessional conduct on the ground that they were employed, rather than independent, practitioners. The charges were brought before the state optometry board which was composed solely of independent practitioners. Gibson, 411 U.S. at 567-68, 93 S.Ct. at 1692-93. Finding that the licensed board members had an indirect pecuniary interest in restricting the activities of their competitors, the district court declined to abstain under Younger and enjoined the proceedings. Accepting the district court's specific conclusion that the pecuniary interest of the board members had "sufficient substance" to disqualify them under the special circumstances in which the case arose, the Court held that abstention under Younger was not required. Id., 411 U.S. at 579, 93 S.Ct. at 1698.
 
 
 31
 Significantly, the Gibson court further held that the availability of de novo state court review following the board proceedings did not warrant a different result. Id. at 577, 93 S.Ct. at 1697. As we noted in United Church, 689 F.2d at 701, in the context of a challenge to a reversion proceeding presided over by the very entity to whom title was to revert, "[s]ubmission to a fatally biased decision making process is in itself a constitutional injury sufficient to warrant injunctive relief, where irreparable injury will follow in the due course of events, even though the party charged is to be deprived of nothing until the completion of the proceedings." See also Ward, 409 U.S. at 61-62, 93 S.Ct. at 83-84 ("Nor ... may the State's ... procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral detached judge in the first instance").
 
 
 32
 TIA has alleged that the Division has an indirect pecuniary interest in the adjudication of its case akin to the interest that fatally infected the mayor's traffic proceedings in Ward. According to TIA, the penalties and costs collected as a result of the Division's enforcement activities constitute a material source of funding for the Division that could affect its ability to impartially preside over TIA's case. The Division disputes this charge, but no precise figures concerning the Division's financing have been established. Although the parties disagree over the level of control the Division exercises over these funds, the Division concedes that Indiana law earmarks certain funds generated as a result of the Division's enforcement penalties for the Division's enforcement account.
 
 
 33
 TIA argues that the mere allegation of bias, in and of itself, renders abstention under Younger inappropriate. To hold otherwise, it suggests, would unduly burden the district court's Younger abstention analysis, requiring courts to engage in an adjudication on the merits merely to determine whether abstention is appropriate. This argument finds no support in the case law. Indeed, in case after case involving claims of bias and abstention under Younger, courts have consistently implied that at least some findings are necessary before determining whether abstention is warranted. See, e.g., Gibson, 411 U.S. at 577, 93 S.Ct. at 1697 (accepting district court's "conclusion"); United Church, 689 F.2d at 697-98 n. 3 (abstention inappropriate after court's "determination" that proceedings were fatally infected); W.C.M. Window, 730 F.2d at 491 (Younger abstention inapplicable when the state tribunal is "deemed" to have prejudged the federal claim). Cf. Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir.1976) (rejecting district court's reliance on mere allegations of harassment in failing to abstain). Though the inquiry by no means must entail a full blown adjudication on the merits, the facts must be sufficiently developed to allow the court to make a realistic assessment of whether the potential for bias is sufficient to warrant a federal court to step in to protect the plaintiff's procedural due process rights. As the Court explained in Withrow v. Larkin, 421 U.S. at 47, 95 S.Ct. at 1464, which involved allegations of bias related to a state agency's dual role as an investigatory and adjudicatory body, the court must be convinced that "under a realistic appraisal of psychological tendencies and human weakness ... [the challenged practice] poses such a risk of actual bias or prejudgment that the practice must he forbidden if the guarantee of due process is to be adequately implemented."
 
 
 34
 No such inquiry was conducted here. Instead, the district court held that any constitutional risks posed by the proceedings could be adequately addressed by state court review of the agency's decision. However, as we noted previously, judicial review cannot save a prior state proceeding found to be constitutionally defective. On remand, the court should ascertain the portion of the Division's funding that is generated as a result of its enforcement activities. The court should also consider the extent to which the Division controls these funds. If, as the Division suggests, its power over how these funds are spent is limited, or the portion of its budget that these funds comprise is insubstantial, a finding of institutional bias would not be warranted. Again, the inquiry must involve a realistic appraisal of the effect that the alleged pecuniary interest would likely have on the adjudicator's capacity for fair and impartial decisionmaking. If bias is found, an injunction should issue. Otherwise, depending on the court's finding with respect to prejudgment, Younger abstention may be appropriate.
 
 
 35
 A similar inquiry is required with respect to TIA's claim that the Division has prejudged the outcome of the proceeding. In this regard, we first note that it has long been settled that the combination of investigative and adjudicative functions within an agency, absent more, does not create an unconstitutional risk of bias in administrative adjudication. Withrow, 421 U.S. at 52, 95 S.Ct. at 1467. Nor is "[t]he mere exposure to evidence presented in nonadversary investigative proceedings ... [sufficient] in itself to impugn the fairness of [an administrative board] at a later adversary proceeding." Id. at 55, 95 S.Ct. at 1468.
 
 
 36
 Nevertheless, as TIA points out, this does not appear to be a typical case. TIA has alleged that Dant, the individual charged with ultimately adjudicating its case, personally led the investigation into TIA's activities, stated her belief that the evidence "established" TIA's liability, and finally publicly commented on the case after the administrative complaint had been filed. Depending on the degree of her involvement in the underlying investigation and the nature of her public statements about the case, it may be that Dant has prejudged this case. See Morrissey v. Brewer, 408 U.S. 471, 485-86, 92 S.Ct. 2593, 2602-03, 33 L.Ed.2d 484 (1972) (parole officer directly involved in case cannot constitutionally determine whether reasonable grounds exist to revoke parole); Murchison, 349 U.S. at 138, 75 S.Ct. at 626 (violation of due process where judge relied on first hand knowledge of witnesses' conduct in convicting them for contempt); Cinderella Career and Finishing Schools, Inc. v. F.T.C., 425 F.2d 583, 551 (D.C.Cir.1970) (constitutionally unacceptable for a decisionmaker to announce in advance his position on adjudicative facts). But see Hortonville Joint School Dist. v. Hortonville Education Assoc., 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) ("mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker"). Dant, herself, appears to have recognized as much when she informed TIA's counsel that she was planning on recusing herself from the case. As noted above, Dant ultimately did attempt to delegate all of her adjudicative authority over this case to Raymond Hafsten, an independent hearing officer, on March 25, 1992. The validity of this attempted delegation is presently under consideration by a state appellate court.
 
 
 37
 On remand, the district court should take into account the validity of the attempted delegation in deciding whether the Division can adjudicate the case in accordance with the requirements of due process.[7] The court should also consider the impact that the apparent change in Division commissioners may have on the legitimacy of the Division proceedings. If the new commissioner had little or no involvement in the underlying investigation, the fact that his predecessor may have prejudged this case is of little relevance. It should certainly not prevent him from fairly discharging his own duties as the ultimate adjudicator of the matter. Again, if after developing the necessary facts, the court finds that the ultimate decisionmaker for the agency has impermissibly prejudged the case, an injunction should issue. Otherwise, assuming no institutional bias has been found, the court must abstain under Younger.
 
 B. Immunity
 
 38
 TIA also challenges the district court's conclusion that Dant was immune from damages under the doctrines of qualified, and in the alternative, absolute immunity. Finding that the district court's conclusion, at least with respect to Dant's qualified immunity, was a correct one, we affirm the dismissal of Count II of the complaint.
 
 
 39
 "Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the Supreme Court explained in Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987),
 
 
 40
 The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official's action is protected by qualified immunity unless the very action in question has been previously held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 41
 TIA has charged Dant with two general violations of its constitutional rights. First, TIA argues that as the head of an agency that finances a material part of its budget through its enforcement activities, Dant's investigation and proposed adjudication of TIA's case violated its right to procedural due process. Yet, as the district court properly noted, in investigating whether TIA failed to properly supervise Rousey, Dant was merely carrying out one of the duties she was obligated to perform as the Indiana Securities Commissioner. The state budget mechanism under which Dant and the Division operated apparently has never been subject to a constitutional challenge, let alone held unconstitutional. Although a statute or a specific pattern of activity need not have been declared unconstitutional for the purpose of determining whether a constitutional right has been clearly established, the unlawfulness of the statute or conduct must be "apparent". Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. While industrious attorneys can be expected to draw parallels between factual distinct cases such as Ward and Gibson and the case at hand, the doctrine of qualified immunity does not require government officials to do the same. Dant's decision to enforce the very statute she has been charged with carrying out does not entitle TIA to sue her for damages even if the budgetary mechanism under which the Division operates were ultimately held unconstitutional.
 
 
 42
 TIA also alleges that Dant's prejudgment of a case over which she would later be required to act as the ultimate adjudicator similarly violated its due process rights, entitling it to damages. Yet, as noted above, shortly before the administrative complaint was filed, Dant took steps to distance herself from the adjudication of TIA's case. Dant first informed TIA's counsel of her intent to recuse herself from the case. Then, a few days after the administrative complaint was filed, she appointed an independent hearing officer to preside over the case, something she had apparently done successfully before on several occasions. Though it eventually may turn out that Dant lacked the statutory authority to delegate her duties in the precise manner chosen, TIA has not alleged, nor could we find on the facts alleged, that Dant should have known that she was unable to recuse herself in any manner from the adjudication of this case. As a government official performing discretionary functions that she had no reason to believe violated TIA's clearly established constitutional rights, Dant is immune from this suit for damages.
 
 IV. Conclusion
 
 43
 For the foregoing reasons the district court's dismissal of Count I is REVERSED and this case is REMANDED for further proceedings consistent with this opinion. The dismissal of Count II is AFFIRMED.
 
 
 
 *
 The Honorable Ann Claire Williams, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [2]
 It appears that Dant is no longer serving as Indiana Securities Commissioner. (TIA's Motion to Take Judicial Notice at 1)
 
 
 [3]
 Although TIA quotes portions of this letter in its complaint and in the briefs on appeal, the letter is not part of the record on appeal. Defendants characterize this letter as "nothing more than a 'demand letter' " mailed in the context of settlement negotiations
 
 
 [4]
 TIA has challenged the Division's appointment of Hafsten as an independent hearing officer in a separate state court proceeding. In an order issued on July 7, 1994, an Indiana trial court declared Dant's March 25, 1992 Order "invalid and void" finding that the attempted delegation of ultimate agency authority to a third party was invalid under Indiana law. Trust Investment Advisors, Inc. v. Hafsten, No. 49FO8-9402-CP-0194 (Marion Cty. Ind. Mun. Ct. July 7, 1994) (unpublished opinion). Hafsten, Hogsett, and the present Indiana Securities Commissioner have appealed the decision
 
 
 [5]
 See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1527 n. 9, 95 L.Ed.2d 1 (1987) ("[t]he various types of abstention are not rigid pigeon holes into which federal courts must try to fit cases")
 
 
 [6]
 TIA has assumed, with some reason, that the absence of a competent state tribunal implicates the third element of the Middlesex test--the adequate opportunity to timely raise its constitutional challenges. This view finds support in this circuit's case law. See W.C.M. Window, 730 F.2d at 490-91; United Church, 689 F.2d at 697-98 n. 3. However, the Supreme Court has suggested on at least one occasion that the absence of a competent state tribunal actually qualifies as one of the "extraordinary circumstances alluded to in Younger where abstention is inappropriate even though all of the Younger elements have ostensibly been met". Kugler v. Helfant, 421 U.S. 117, 124-25 n. 4, 95 S.Ct. 1524, 1530-31 n. 4, 44 L.Ed.2d 15 (1975). In any event, there is no disagreement on the overriding rule that abstention under Younger is inappropriate whenever the state tribunal is unable to adjudicate the controversy before it in accordance with the requirements of due process
 
 
 [7]
 The court might consider staying any decision in this regard until after the state court has finally determined the legality of the March 25, 1992 Order