Gerald C. **STERNS** and George W. Murgatroyd III, **Plaintiffs,**

v.

Donald R. **LUNDBERG,** in his official capacity as Executive Secretary of the Indiana Supreme Court Disciplinary Commission; and Sherrill Wm. Colvin, Julia Blackwell Gelinas, Marce Gonzales, Jr., Grant W. Hawkins, William F. Lawyer, Jr., Kerry L. Thompson, and Barbara Coyle Williams, in their official capacities as members of the Indiana Supreme Court Disciplinary Commission, **Defendants.**

No. IP 95–674 C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

April 8, 1996.

**166**

Samuel J. Goodman, Goodman Ball & Van Bokkelen, Highland, Indiana, F. Thomas Schornhorst, Indiana University School of Law, Bloomington, Indiana, James H. Voyles, Symmes Voyles Zahn Paul and Hogan, Indianapolis, Indiana, for plaintiffs.

Wayne E. Uhl, Office of Attorney General, Indianapolis, Indiana, for defendants.

ENTRY

BARKER, Chief Judge.

This matter is before the Court on the following motions: (1) defendants' motion to dismiss the complaint pursuant to the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); and (2) plaintiffs' motion requesting an evidentiary hearing and oral argument on defendants' motion. For the reasons set forth below, defendants' motion is granted; plaintiffs' motion is denied in part and denied as moot in part.

## I. FACTUAL BACKGROUND.

In February of 1992, a Kentucky Air National Guard cargo plane crashed near the Evansville, Indiana airport, killing as many as sixteen people and injuring several others. Following the crash, plaintiffs Gerald Sterns and George Murgatroyd, although not admitted to practice law in Indiana, directed mailings to survivors and the families of deceased crash victims in order to solicit potential clients.

On March 9, 1992, the Chief Justice and an associate justice of the Indiana Supreme Court conducted two news conferences. According to plaintiffs, the conferences were held "for the purpose of criticizing the conduct" of lawyers who had contacted crash victims or their families through advertising or personal correspondence. (Plaintiff's Brief in Response, p. 3). The Chief Justice went on to announce that the Indiana Supreme Court had directed its Disciplinary Commission ("the Commission") to conduct a comprehensive investigation of the alleged solicitations, and to adopt an "aggressive posture" with respect to the Court's rules governing attorney advertising and solicitations of business. (Complaint, ¶¶ 10, 11).

Disciplinary actions before the Indiana Supreme Court are conducted in accordance with the Indiana Admission and Discipline Rules. As a general matter, the initial or investigative step occurs when the Commission's Executive Secretary inquires into the charges brought against an attorney to determine whether "there is a reasonable cause to believe that the respondent is guilty of misconduct. . . ." Ind.Admin.Disc.R. 23(10)(b). If the Executive Secretary determines that such cause exists, the grievance is then passed on to the whole Commission, which may either dismiss the grievance or file a complaint with the Indiana Supreme Court.

Once a complaint is filed, the Supreme Court appoints an officer to preside over the disciplinary hearing. The adjudicative stage of the proceedings then commences with an adversarial hearing, where the attorney charged with misconduct is given an opportunity to respond to the charges, be represented by counsel, cross-examine witnesses and produce evidence and witnesses on his own behalf. After the hearing, the hearing officer "shall determine whether misconduct has been proven by clear and convincing evidence and shall submit to the Supreme Court written findings of fact." Disc.R. 23(14)(f).

The appellate stage of the disciplinary proceedings begins when either the charged at-

torney or the Commission files a petition for review of the findings or recommendations with the Indiana Supreme Court. The court may either adopt the findings and recommendations submitted or, after review of the record, issue its own findings and discipline.

On March 8, 1993, defendant Donald Lundberg, the Commission's Executive Secretary, initiated separate disciplinary actions before the Indiana Supreme Court against both plaintiffs, *sub nom. In the Matter of Gerald C. Sterns*, No. 98S00–9303–DI–310, and *In the Matter of George W. Murgatroyd, III*, No. 98S00–9303–DI–307. Lundberg charged that Sterns and Murgatroyd had solicited clients in violation of Indiana's disciplinary rules, and further requested that the Supreme Court enjoin them from the unauthorized practice of law in the State.

Each plaintiff, acting separately through counsel, then moved to dismiss the disciplinary proceedings on the grounds that the Indiana Supreme Court lacked personal jurisdiction over them. The plaintiffs also challenged the Court's subject matter jurisdiction because, as out-of-state lawyers not licensed to practice in Indiana, they were not subject to Indiana's disciplinary rules, or so they claimed. On October 29, 1993, the Court denied both motions in tersely-worded orders.

On May 22, 1995, plaintiffs filed their Verified complaint for Declaratory and Injunctive Relief, seeking to enjoin the defendants from progressing with the disciplinary proceedings. Specifically, plaintiffs allege that the Commission's attempt to assert personal and subject matter jurisdiction over them violates the Due Process Clause of the Fourteenth Amendment and is actionable pursuant to 42 U.S.C. § 1983. Defendants filed the instant motion to dismiss on August 31, 1995, arguing that the Court abstain from considering the merits of this action in light of the related judicial proceedings currently pending before the Indiana Supreme Court.

## II. ANALYSIS.

■ As a general rule, federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Since *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), however, the Supreme Court has instructed that principles of equity, comity and federalism counsel abstention in deference to ongoing state proceedings in most circumstances. Thus, federal suits seeking to enjoin state criminal proceedings, *Younger,* or ongoing civil nuisance actions, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or even proceedings before state administrative agencies, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), have all been dismissed in order to foster "a proper respect for state functions. . . ." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750.

■ In a case similar to the one at bar, the United States Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) held that *Younger* required a district court to abstain from interfering in a lawyer disciplinary proceeding. In so doing, the Court enumerated a three-part test which forms the basis of our analysis today:

1) Do state bar disciplinary hearings constitute an ongoing state judicial proceeding?

2) Do the proceedings implicate important state interests?

3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges?

*Id.* at 432, 102 S.Ct. at 2521; *Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290, 295 (7th Cir.1994). Because the parties agree that the first element is satisfied, we will address each of the remaining two elements in turn.

### (1). The Disciplinary Proceedings Implicate Important State Interests.

■ Federal courts are in universal agreement that the regulation of lawyers' conduct is a fundamentally important state interest. *Middlesex,* 457 U.S. at 434, 102

S.Ct. at 2522; *Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir.1996); *Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708 (9th Cir.1995); *Storment v. O'Malley*, 938 F.2d 86, 89 (7th Cir.1991); *Hensler v. Dist. Four Grievance Committee*, 790 F.2d 390, 392 (5th Cir.1986); *Sekerez v. Supreme Court of Indiana*, 685 F.2d 202, 207 (7th cir.1982); *cf. Florida Bar v. Went For It, Inc.*, — U.S. —, —, 115 S.Ct. 2371, 2376, 132 L.Ed.2d 541 (1995) (citations omitted). "The judiciary as well as the public is dependent upon pro- ·fessionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Middlesex*, 457 U.S. at 434, 102 S.Ct. at 2522. Indeed, the fact that the Disciplinary Commission, an agency of the Indiana Supreme Court, is a defendant in the present suit and was the body which initiated the state proceedings against Sterns and Murgatroyd easily demonstrates Indiana's interest in this litigation. *Id.* at 434–35, 102 S.Ct. at 2522.

To counter this logic, plaintiffs offer two arguments. First, as they did in the state disciplinary proceedings, plaintiffs reassert that the Indiana Supreme Court has no jurisdiction to impose sanctions upon out-of-state lawyers who are not licensed to practice in Indiana. Because that court lacks subject matter jurisdiction, plaintiffs maintain that Indiana has no interest in the issues raised in the disciplinary proceeding: "There can be no 'important state interest' in the adjudication of a matter over which the state lacks power to begin with." (Plaintiff's Brief in Opposition, p. 11).

Whatever the actual reach of the Indiana Supreme Court's disciplinary jurisdiction, however, the State itself still has a strong interest in protecting its citizens from unethical attorneys, regardless of their bar affiliation. *Cf. Matter of Fletcher*, 655 N.E.2d 58, 60 (Ind.1995) (supreme court's primary responsibility in discipline matters is to protect the public against unethical professionals, "regardless of whether the practitioner is an attorney admitted to this state's bar"). Further, to say that a proceeding implicates important state interests only if the state adjudicative body has properly exercised its subject matter jurisdiction would require this Court to second-guess the Indiana Supreme Court, which has already answered the jurisdictional question in the affirmative. (Def.'s Reply, Exhs. A, B). Undeniably, it would be self-defeating if, in order to foster the values of comity and federalism, the abstention doctrine required us to reexamine determinations already made by the state courts in deciding whether to interfere with ongoing state proceedings.

Second, plaintiffs argue that despite Indiana's strong interest in regulating attorney conduct, the issues permeating the disciplinary proceeding "implicate overriding federal concerns." (Plaintiff's Brief in Opposition, p. 13). Aviation disasters, for example, "inherently implicate multi-jurisdictional concerns." (*Id.*). Similarly, the dissemination of information to potential clients and the concept of personal jurisdiction are issues governed, at least in part, by the federal constitution. These "paramount federal concerns," plaintiffs maintain (without citation), preclude abstention in this case.

We do not deny that plaintiffs may have colorable federal defenses available to them in the underlying disciplinary proceeding. However, the very notion of abstention— which is based on the theory that "the accused should first set up and rely upon his defense in the state courts, even though this involves a [federal] challenge of the validity of some statute," [1]—presumes the existence of federal issues. In any event, traditional state issues involving attorney discipline, not federal ones, dominate the underlying state proceedings. Thus, the Court finds that *Younger's* second element is satisfied.

**(2). The State Proceedings Provide an Adequate Opportunity to Raise Constitutional Challenges.**

 The third *Younger* requirement is that there be an adequate opportunity in the state proceedings to raise constitutional challenges. Abstention is proper "unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S.

---

1. *Younger*, 401 U.S. at 45, 91 S.Ct. at 750 (inter- nal quotes omitted)

415, 425–26, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). "[T]he burden on this point rests on the federal plaintiff[s] to show that state procedural law barred presentation of [their] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) (internal quotation marks and citations omitted). Sterns and Murgatroyd do not meet this burden.

■ There is nothing in the Admission and Discipline Rules prohibiting the hearing officer from considering federal constitutional challenges to the disciplinary proceedings. The charged attorney can also appeal to the Indiana Supreme Court, where she "may again challenge the constitutionality of the statute itself." *Sekerez v. Supreme Court of Indiana*, 685 F.2d 202, 206 (7th Cir.1982). Indeed, the Indiana Supreme Court has considered such challenges in the past, *see Matter of Friedland*, 275 Ind. 214, 416 N.E.2d 433 (1981) (First Amendment challenges considered); *Matter of Kesler*, 272 Ind. 161, 397 N.E.2d 574 (1979) (procedural due process challenge considered), and has even considered the very issues being advanced by plaintiffs in this proceeding: "Upon thorough review of the foregoing pleadings, we find that this Court has subject matter jurisdiction and personal jurisdiction over the Respondent." (Order Denying Motion to Dismiss, Def's Reply, Exhs. A, B). Thus, finding nothing in the Disciplinary Rules clearly barring plaintiffs from raising their due process challenges, the Court concludes that this last *Younger* requirement is satisfied.[2]

### (3). No Exception to *Younger* Abstention Is Applicable.

■ Even when the *Younger* requirements are satisfied, abstention in deference to a state proceeding is inappropriate if the charges against the plaintiffs were brought in bad faith for the purpose of harassment, *see Arkebauer v. Kiley*, 985 F.2d 1351 (7th Cir. 1993), or if "the state tribunal is deemed to

be biased or to have otherwise prejudged the controversy." *Hogsett*, 43 F.3d at 295. Here, plaintiffs seek refuge under both exceptions, arguing (1) that bad faith harassment can be inferred from the absurdity of attempting to subject out-of-state lawyers not admitted to the Indiana bar to Indiana's disciplinary rules, and (2) that the public involvement of the Chief Justice and an associate justice suggests that they have prejudged the merits of the disciplinary proceedings.

■ First, with regard to plaintiffs' invitation to infer bad faith from the absurdity of the Commission's jurisdictional theory, the Court is simply not convinced that the Commission has no chance of subjecting out-of-state lawyers to Indiana's disciplinary rules. The Discipline and Admission Rules, for example, give the Indiana Supreme Court exclusive jurisdiction over all matters concerning "the practice of law" in Indiana, which is defined generously to include "the giving of legal advice to a client...." *Matter of Fletcher*, 655 N.E.2d 58, 60 (Ind.1995). In *Fletcher*, a recent case analogous to the one at bar, the Indiana Supreme Court liberally construed the scope of its disciplinary jurisdiction in disciplining an out-of-state attorney who was temporarily admitted to the bar *pro hac vice*, but who later withdrew his appearance. 655 N.E.2d at 60–61. In so doing, the Court emphasized that its disciplinary jurisdiction reached all "matters concerning the practice of law in this state, regardless of whether the practitioner is an attorney admitted to this state's bar." *Id.* at 60. Thus, at worst, the Commission's attempt to subject out-of-state lawyers who solicit Indiana citizens to this state's disciplinary rules is not foreclosed by existing caselaw and might even constitute an important case of first impression. Therefore, we cannot say that the Commission's positions are so absurd as to warrant an inference of bad faith or harassment.

---

**2.** In their brief in opposition, plaintiffs liken their personal jurisdiction challenge to cases involving double jeopardy defenses, where federal courts often do not abstain. In both types of cases, they argue, having to defend against the trial itself is the constitutional wrong. Whatever the merits of this analogy, however, we think that it is

foreclosed by *Owens–Corning Fiberglas Corp. v. Moran*, 959 F.2d 634 (7th Cir.1992). In that case, the Seventh Circuit—relying on *Younger* and its progeny—held that the allegedly wrongful exercise of personal jurisdiction by a state court did not justify federal court interference with an ongoing state proceeding.

■ Nor do the public comments allegedly made by the Chief Justice and an associate justice suggest that they are biased. According to the Complaint, the justices "criticized the conduct of certain unnamed attorneys who allegedly had advertised their services to victims of the Evansville" crash, and announced that the Court had directed the Commission both "to conduct a comprehensive investigation of alleged lawyers' solicitations" and to "adopt a more aggressive posture with respect to the rules applicable to attorney advertising. . . ." (Complaint, ¶¶ 10, 11). Plaintiffs do not allege, however, that they were singled out or specifically mentioned by the Chief Justice, or that the Chief Justice committed himself to a particular outcome in their (or any other) disciplinary cases, or that he otherwise indicated an inclination to ignore or misapply the proper legal standards. Indeed, the essence of their allegations is that the Chief Justice called for an investigation—indeed, an aggressive one—into attorney solicitations related to the Evansville air crash. While initiating investigations is not generally considered a routine function for courts, it is fully consistent with both the Disciplinary Rules [3] and the Indiana Supreme Court's constitutional role in regulating attorney conduct. Thus, plaintiffs fail to "overcome [the] presumption of honesty and integrity [accorded] those serving as adjudicators." *Hirsh*, 67 F.3d at 713 (citation omitted).

Moreover, even if this minimal public involvement warrants an inference that the Chief Justice and an associate justice are biased, the fact remains that the investigative and adjudicative functions of any disciplinary action are carried out by the Executive Secretary, the Commission and the hearing officer, not the Supreme Court. Ind.Admis.Disc.R. 23(10)–(14). Although these Commission positions are appointed by the supreme court, there is no hint that that court used its leverage to ensure a particular outcome in the disciplinary proceedings.[4] And, should the proceedings ultimately work their way to the Indiana Supreme Court on appeal, Sterns and Murgatroyd could move for the recusal of the justices in question, further negating the potential for bias.[5]

In main, the Chief Justice's public comments are not indicative of bias, but of the tensions inherent when an adjudicative body is entrusted with regulatory powers. It has long been settled, however' "that the combination of investigative and adjudicative functions within an agency, absent more, does not create an unconstitutional risk of bias in administrative adjudication." *Hogsett*, 43 F.3d at 297. Thus, because the requirements for *Younger* are satisfied and no exceptions apply, the Court finds that abstention is warranted.

## III. CONCLUSION.

For the reasons set forth above, the Court finds that the state disciplinary proceedings do not pose "such a risk of actual bias or prejudgment that the [proceedings] must [b]e [enjoined] if the guarantee of due process is to be adequately implemented." *Hogsett*, 43 F.3d at 297 (citations omitted). Accordingly, defendants' motion to dismiss is GRANTED; plaintiffs' motion requesting an evidentiary hearing and oral argument is

3. The Disciplinary Rules provide that any member of the public may file a grievance, thus initiating a disciplinary investigation. Disc.R. 23(10)(a).

4. In the alternative, Plaintiffs have requested an evidentiary hearing to explore whether the Indiana Supreme Court "or any of its members exercised any undue influence over the decision to proceed with the actions against the plaintiffs." (Plaintiffs' Brief in Opposition, p. 5 n. 4). We think, however, that such a hearing is unnecessary. Plaintiffs do not allege that any undue influence took place and readily admit that they "are unaware whether there were communica-tions between the Executive Secretary or members of the Commission with any member of the Indiana Supreme Court. . . ." (*Id.*). Naturally, we are hesitant to summon the members of the Indiana Supreme Court and its Disciplinary Commission into federal court in order to fish for evidence of undue influence, especially when the plaintiffs themselves have no reason to think that such evidence exists. Thus, plaintiffs' motion for an evidentiary hearing is denied.

5. Apparently, the Indiana Supreme Court has already considered and denied such a motion filed by plaintiff Murgatroyd. (Plaintiffs' Brief in Opposition, p. 6 n. 6).

DENIED IN PART and DENIED AS MOOT IN PART.

It is so ORDERED.