**Thomas P. LOFTUS, Plaintiff,**

**v.**

**TOWNSHIP OF LAWRENCE PARK and Paul J. Jazenski, Defendants.**

**Civ. A. No. 91-94 Erie.**

United States District Court, W.D. Pennsylvania.

May 17, 1991.

Timothy D. McNair, Vendetti Talarico & McNair, Erie, Pa., Eric B. Schnurer, Philadelphia, Pa., for plaintiff.

Robert Jeffery, North East, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

Defendant Township of Lawrence Park is a political subdivision of the Commonwealth of Pennsylvania, created pursuant to the First Class Township Code. Defendant Paul Jazenski was, at all relevant times, the Zoning Administrator for Lawrence Park. The plaintiff, Mr. Loftus, is a resident of Lawrence Park and a candidate for the Democratic nomination for the office of Township Commissioner. By this action he seeks to enjoin enforcement of a local zoning ordinance, to wit, Township of Lawrence Park Zoning Ordinance § 404 (Ordinance 300, enacted March 4, 1985) [hereinafter LPZO], because it prevents him from posting political signs supporting his candidacy. He argues that the ordinance violates his right to free speech, U.S. Const.Amend. I, and that under 42 U.S.C. § 1983 and Fed.R.Civ.P. 65, he is entitled to injunctive, declaratory and monetary relief. In addition, Mr. Loftus alleges violations of his rights under the Fifth and Fourteenth Amendments. U.S. Const.Am. V, XIV. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343. Asserting pendent jurisdiction, Mr. Loftus also claims that defen-

dants violated his rights under the Pennsylvania Constitution, Pa.Const.Art. I § 7.

On May 2nd, 1991, this court held a short hearing on this matter. Due to the accelerated pace of the case and the primacy of legal issues, both sides conceded to a general agreement regarding most of the pertinent facts. On May 8th, 1991, we issued an order, stating that an opinion would follow. Today we issue that opinion together with a modified order intended to clarify an ambiguity in the first one.

## I. *Factual Background*

The challenged ordinance provides:

SECTION 404—*SIGNS*

All signs require a permit before erection and the following conditions shall apply to the issuance of said permit.

.    .    .    .    .

404.3 Signs in residential districts shall be limited to temporary real estate signs not to exceed four (4) square feet, temporary garage sale signs not to exceed two (2) square feet, and permanent home occupation signs not to exceed one (1) square foot that are affixed to the structure housing the activity. All temporary signs must be removed immediately after the expressed activity has terminated. LPZO at §§ 404, 404.3.

Mr. Loftus attended many meetings of the Township's Board of Commissioners seeking to convince the Board to install an exemption for political signs in this ordinance. Although his attempts were unsuccessful, in the fall of 1990 he went ahead and posted a sign in his front yard supporting a gubernatorial candidate.

Mr. Jazenski sent Loftus a notice of violation which stated that if Loftus wished to challenge the validity of the ordinance, he should "remove the sign and seek a curative amendment." The Ordinance, however, allows for a swifter review procedure. The Ordinance allows appeal of enforcement notices to the Zoning Hearing Board. LPZO § 616. Loftus was never informed of that provision. After Loftus refused to comply, Jazenski filed a complaint in District Justice Court 06–3–01.

Loftus appeared before District Justice Peter Nakoski and defended himself on the grounds that the ordinance was unconstitutional and that the Township had failed to accord him due process by depriving him of his appeal to the Zoning Hearing Board. Loftus lost and was fined $100, and he then initiated an appeal to the Court of Common Pleas. Next, he brought this action in federal court; his appeal to the Court of Common Pleas is still pending.

## II. *Younger* Abstention

### A.

■ *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) teaches that federal courts should abstain from interfering with state processes where equity does not clearly demand such interference. *Younger* is based, less upon judicial economy, see *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), than on a recognition that state courts are as competent as federal courts to adjudicate constitutional questions. It is also built upon "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* 401 U.S. at 44, 91 S.Ct. at 750. Recent expositions remind us, however, that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citation omitted) [NOPSI]. Abstention, therefore, remains the exception rather than the rule, *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), and even under *Younger* ours is a "virtually unflagging" obligation to exercise statutory jurisdiction. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246;

*NOPSI,* 491 U.S. at 359–60, 109 S.Ct. at 2513, 105 L.Ed.2d at 311.

■ "That principle does not eliminate, however, ... the federal courts' discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513, 105 L.Ed.2d at 311. Equitable discretion is the basis of *Younger* and although justified by comity, parity and federalism, the mechanics of *Younger* remain the mechanics of equity. Federal courts must abstain where those seeking federal relief fail to meet the basic requirements for equitable intervention. *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750–51; *Samuels v. Mackell,* 401 U.S. 66, 68, 71, 72, 91 S.Ct. 764, 767, 767–68, 27 L.Ed.2d 688 (1971) (declaratory judgment, although technically statutory, is governed by *Younger*'s equitable analysis). Perhaps most importantly, *Younger* established that merely having to litigate a constitutional claim in state court cannot, in and of itself, be such a grave injustice that federal courts may be called in to halt state processes. See *Younger,* 401 U.S. at 46–47, 91 S.Ct. at 751–52; *Samuels,* 401 U.S. at 71–72, 91 S.Ct. at 767–68.

■ Equitable abstention under *Younger* is appropriate "if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989) (citation omitted). All these elements are obviously present here. The appeal of the enforcement proceedings is still pending in the Court of Common Pleas,[1] zoning is clearly an important concern of the township, see *Sendlewski v. Southampton,* 734 F.Supp. 586 (E.D.N.Y.1990), and the opportunity to litigate the constitutional claims is *a fortiori* present—Loftus did litigate them.[2]

## B.

■ As a prima facie matter then, *Younger* would appear to bar Mr. Loftus's action. "Even if the necessary three predicates exist, however, *Younger* abstention is not appropriate if the federal plaintiff can establish that ([4]) the state proceedings are being undertaken in bad faith or for purposes of harassment or ([5]) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Schall,* 885 F.2d at 106 (citation omitted). *Younger* itself recognized that a variety of "unusual situations calling for federal intervention might arise, but there is no point in our attempting now to specify what they might be." *Younger,* 401 U.S. at 54, 91 S.Ct. at 755.

It is well settled that these 'exceptions' to *Younger* must be narrowly construed. Once the first three predicates are established, *Younger* abstention will be avoided only under truly compelling circumstances. "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Moore v. Sims,* 442 U.S. 415, 433, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979) (ci-

---

1. Even if enforcement proceeding is civil rather than criminal, *Easton v. Marra,* 230 Pa.Super. 352, 326 A.2d 637 (1974), we are unimpressed with defendants' argument that *Younger* does not apply to civil cases. See, *e.g. Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102

S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

2. Defendants have not raised the defenses of res judicata or collateral estoppel, and thus we will not address them. See *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (state court adjudications, even on federal issues, have full res judicata effect in federal court).

tation omitted). Moreover, since defendants have established those first three predicates, the burden shifts to Mr. Loftus to show that these extraordinary circumstances are present. See *Schall*, 885 F.2d at 107 ("the burden ... rests on the federal plaintiff to show 'that [*Younger* doesn't apply because] state procedural law barred presentation of its claims'") (citation omitted), *Id.* at 111 (burden is on federal plaintiff to establish bad faith).

## C.

■■ Mr. Loftus has not convinced us to enjoin the proceeding currently on appeal to the Court of Common Pleas. *Younger* and its sound principles of comity and federalism demand that we abstain from any such action, and we are confident that the correct result will be reached in that court. Additionally, however, the plaintiff seeks to enjoin *future* enforcement of the ordinance, and because of the immediacy and the gravity of the harm the ordinance threatens, that relief will be granted.

The distinction between addressing present and future enforcement may be largely one of semantics, but it remains a slippery issue. In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), *Younger* abstention did not apply because the relief sought was "in no way 'designed to annul the results of the state trial' since the relief is wholly prospective." *Id.* at 711, 97 S.Ct. at 1433. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), however, held that one plaintiff could not avoid *Younger* by classifying himself as "'a potential future defendant.'" *Id.* at 126, 93 S.Ct. at 713. *Doran v. Salem*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), allowed two plaintiffs who obeyed the law and thus were not prosecuted to seek an injunction against enforcement of a local ordinance; another plaintiff who refused to obey and was the subject of a criminal proceeding was dismissed under *Younger* even though he

sought only prospective relief. In *Spartacus, Inc. v. Borough of McKees Rocks*, 694 F.2d 947 (3d Cir.1982), a case with a posture similar to ours, the Third Circuit held that "[a]lthough the appeal of Spartacus, Inc. is still pending, we conclude that *Younger* does not bar injunctive relief in the instant case because appellants state that their complaint should be read to seek injunctions against only *future* citations and prosecutions under the ordinance." *Id.* at 949 n. 3 (emphasis in original). Yet, in a later opinion the Third Circuit stated that "such a strategy cannot be used to avoid application of the *Younger* doctrine," *Schall*, 885 F.2d at 110, and *Spartacus* was deemphasized. *Id.* at 111. In *Schall*, however, the plaintiff sought "to have the federal courts mark her state judgment as satisfied," *Id.*, and thus it does not expressly govern the instant case in which no interference with state proceedings will be sanctioned.[3]

Limiting the injunction to prospective application is not a magic incantation capable of keeping *Younger* at bay on its own. A prospective injunction does, however, present a somewhat lesser intrusion onto state sovereignty than does an injunction arresting an ongoing state process, and thus the present/future distinction is one more factor relevant to the equitable balance. When *Younger* is implicated at all, the federal plaintiff is already involved in some state proceeding. If the federal plaintiff would suffer peculiar harm by awaiting the outcome of the state proceeding, or if the state proceeding would not necessarily resolve the issue and time is of the essence, then the federal court may be justified in awarding prospective equitable relief, see Bator, Meltzer, Mishkin and Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 1420–24 (3d ed. 1988) [Hart & Wechsler]; *Doran*, 422 U.S. at 929 and n. 3, 95 S.Ct. at 2566–67 and n. 3, even if an unrestricted injunction would be inappropriate.

---

**3.** We obviously express no opinion as to any preclusive effect other courts might choose to give this adjudication.

Here, Mr. Loftus seeks the democratic nomination for the office of Township Commissioner, and the primary is only two weeks away on May 21, 1991. Both parties agree that the campaign is neither a large-budget nor a large-volume affair, and thus each time a potential voter passes by his empty lawn, Mr. Loftus loses a significant portion of his opportunity to reach the electorate. The ordinance, no doubt, causes such losses daily and might very well cause Mr. Loftus to lose the election. The election is a single event incapable of repetition, and it is of such paramount importance to both the candidate and his community, that denying a candidate his effective participation in it is precisely the type of "great, immediate, and irreparable harm," *Moore*, 442 U.S. at 433, 99 S.Ct. at 2382, that justifies dispensing with the deferential niceties of *Younger* abstention. If Mr. Loftus violates the ordinance in an attempt to save his candidacy, he is threatened with swift prosecution, a threat that cannot be doubted in the face of past prosecutions. The pending appeal is not certain to address the constitutional issues, see Hart & Wechsler at 1421–22, and thus is not certain, even if Mr. Loftus wins, to offer protection for future actions. We believe that these factors alone warrant a rejection of the *Younger* abstention.

Additionally, however, when we consider equitable relief we ought to "consider the possibility of harm to other interested persons from the grant or denial of the injunction, as well as harm to the public interest." *Spartacus*, 694 F.2d at 949 (quoting *Eli Lilly & Co. v. Premo Pharmaceutical Labs., Inc.*, 630 F.2d 120, 136 (3d Cir.1980). First Amendment jurisprudence also allows the plaintiff to "rely on the impact of the ordinance on the expressive activities[, including the right to receive information,] of others." *Schad v. Mt. Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981).

In this case the most significant harm befalls the public in the form of censured political expression. The importance to the public of free political exchange cannot be overstated; it is the core of our societal structure. That is why the First Amendment protections have their "fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971); *Buckley v. Valeo*, 424 U.S. 1, 39, 96 S.Ct. 612, 644, 46 L.Ed.2d 659 (1976). Here, The Ordinance effectively bans political signs in a community where that is the most common method of political campaign communication. If this ordinance is unconstitutional, then all people within its ambit—candidates and voters alike—suffer. While similar arguments could be made with respect to any of the other laws at issue in the earlier cases, it is more urgent under the facts here: a small locale with an imminent election, campaigns which are run on a modest level with few funds, and candidates who can afford practically no other method of advancing their causes. See *John Donnelly & Sons v. Campbell*, 639 F.2d 6, 16 (1st Cir.1980); *Baldwin v. City of Redwood*, 540 F.2d 1360, 1368 (9th Cir. 1976).

Because they are so cost-effective, signs are a most important method of informing the public on the critical issues in the election. In fact, the only alternative to signs suggested by the defendants is that Mr. Loftus "deliver[ ] handbills door to door" or "go[ ] door to door knocking to introduce oneself and solicit votes." Brief in Opposition at 6.[4] While these methods may be effective, taking signs out of the picture obviously has a serious impact on the dissemination of important information. Of course this same "public" has an interest, already expressed through its elected representatives by the disputed ordinance, in *not* allowing signs. That particular interest, however, will not be affected in any appreciable manner by a temporary injunction.

Finally, by alleging that the ordinance was selectively enforced against Loftus, plaintiff charges the defendants with bad faith and harassment—another 'exception' to *Younger*. See *Video Store Inc., v. Hol-*

---

4. Defendants also suggest that Mr. Loftus could     place the signs elsewhere.

*comb,* 729 F.Supp. 579 (S.D.Oh.1990).[5] Mr. Loftus certainly has failed to prove these claims, but since we accept that at least 16 violative signs remain standing, their owners unreproached, it is possible that plaintiffs can do so later. At the very least, the ordinance's broad proscription, especially with its permit requirement, creates an enormous *potential* for selective censuring of political debate. Any harm caused by government censorship of political speech, especially so close to an election, would be so atrocious that when compounded with the real potential for such abuse, we perceive yet another factor favoring immediate attention.[6]

■ Equitable principles govern *Younger* as well as traditional injunctive relief questions, and many elements overlap. See, e.g., *Doran,* 422 U.S. at 931, 95 S.Ct. at 2567–68. To obtain a preliminary injunction, plaintiffs must show some combination of the following: a probability of success on the merits of the underlying cause of action, an immediate and irreparable harm if the injunction is not granted, a potential hardship to the plaintiff which outweighs the harm defendant faces, and a public interest favoring the injunction. *Sullivan v. Pittsburgh,* 811 F.2d 171, 181 (3d Cir.1987). By pointing to (1) the threat of future prosecutions, (2) the imminent election, (3) the immediate and irreparable nature of the harm, (4) the possible inconclusiveness of the civil enforcement proceeding, (5) the harm to the public interest and (6) the possible abuse of the ordinance, Mr. Loftus has met his burden under *Younger* as well as satisfying all the prerequisites to a preliminary injunction except for the likelihood of success on the merits. To that question we now turn.

### III. First Amendment

■ The Ordinance makes it unlawful for people to express themselves through signs posted on their lawns. As a restriction on expression, its constitutional fate will depend on whether it is content neutral. If the ordinance is content-neutral then it must be narrowly drawn to serve a significant government interest, and it must leave open "ample alternative channels of communication." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 812, 104 S.Ct. 2118, 2132–33, 80 L.Ed.2d 772 (1984); *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 654, 101 S.Ct. 2559, 2567, 69 L.Ed.2d 298 (1981). If the ordinance is not content-neutral, then the government must meet a stricter test; it "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983); *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980); *Sturm v. Clark,* 835 F.2d 1009, 1015 (3d Cir.1988).[7]

■ The Ordinance is not content-neutral. *Matthews,* 764 F.2d at 59–60. It bans all signs in residential districts except for temporary signs containing one of the

---

5. We do not believe that the defendants admitted to selectively enforcing the ordinance, but we do believe that they stipulated, at least for the purposes of this injunction, to plaintiff's allegation that signs remain standing in violation of the ordinance at least 16 specified locations. Supplemental Memorandum of Law in Support, Exhibit 1 at unnumbered p. 3.

6. Even if another 'exception' to *Younger*—the exception for "flagrant unconstitutionality"—remains good law, see *Younger,* 401 U.S. at 54, 91 S.Ct. at 755; *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (Stevens, J., concurring); *Zalman v. Armstrong,* 802 F.2d 199 (6th Cir.1986), we do not hold that the ordinance at issue here is of such a character. Especially on this preliminary injunction adjudication, we look only as far as the likelihood of success on the merits.

7. We do not think that First Amendment analysis changes to any great degree because the ordinance here effects private, rather than public, property. "[A]s is true of other ordinances, when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad,* 452 U.S. at 69, 101 S.Ct. at 2182. To the extent that disparate treatment is warranted, expression on one's own private property is deserving of more constitutional protection. Cf. *Taxpayers for Vincent,* 466 U.S. at 811, 104 S.Ct. at 2132; *Matthews v. Town of Needham,* 764 F.2d 58, 61 (1st Cir.1985).

following messages: "for sale" or "garage sale." LPZO § 404.3. Thus the Ordinance "presumptively violate[s] the First Amendment," *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986), and it cannot stand unless we find a compelling interest and a very close means/ends fit. *Sturm,* 835 F.2d at 1015. Moreover, the entire universe of signs that are likely to end up on residential front lawns probably contains few items other than temporary real estate signs, "garage sale" signs and political signs. Thus by expressly permitting the former two categories and not the latter, § 404.3 is not only content-based, but it also—whether intentionally or not—effectively singles out for discrimination a most important category of protected expression: political speech. "The law impacts more heavily on ideological than on commercial speech—a peculiar inversion of First Amendment values.... [T]he statute's impositions are both legally and practically the most burdensome on ideological speech, where they should be the least." *Metromedia,* 453 U.S. at 513 n. 18, 101 S.Ct. at 2895 n. 18 (quoting *John Donnelly & Sons,* 639 F.2d at 15–16); *Matthews,* 764 F.2d at 61.

The governmental interest advanced by the defendants is that of "aesthetics and the un-cluttering of intersections and roadways," Brief in Opposition at 10, an interest specifically recognized as sufficient to support a content-neutral ban on billboards, *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981); *Taxpayers for Vincent,* 466 U.S. at 807, 104 S.Ct. at 2130, as well as posted signs. *Id.* at 808, 104 S.Ct. at 2130–31. While such an interest is legitimate, however, the Ordinance will likely fail constitutional muster for two reasons.

First, we doubt that aesthetics or residential quietude is sufficiently compelling to ever justify a content-based restriction, such as the one at bar, on freedom of expression. See *Carey,* 447 U.S. at 464–68, 100 S.Ct. at 2292–94. In fact, "aesthetics" is precisely the type of subjec-

tive judgment which, if used to guide a content-based restriction, could lead to the most contemptible censorship of unpopular ideas or "unpleasant" messages. Second, even if aesthetics were a compelling interest, the content-based distinction in the ordinance cannot conceivably further that interest. It would be ludicrous to suggest that a temporary for sale sign is more aesthetically pleasing than a political sign, and defendants do not make that argument. The only way the Ordinance furthers the aesthetic interest is simply to lessen the total number of signs that will be posted, but again there must be a reason for limiting signs in the manner undertaken by the Ordinance, rather then in some other, content-neutral, way. "Insofar as the city tolerates [signs] at all, it cannot choose to limit their content to commercial messages; the city may not conclude that [commercial messages] are of greater value than ... non-commercial messages." *Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895.

Plaintiff then, has a strong likelihood of success on the merits of his claim, and together with those discussed in part II, all requirements for injunctive relief have been met. In an effort to clarify what may not have been clear in our original order, today we issue an amended order explicating that the injunction is prospective only; it prohibits any new enforcement actions from being brought after the date of the original order.

### ORDER

AND NOW, this 17th day of May, 1991, for the reasons set forth in the accompanying memorandum opinion,

IT IS HEREBY ORDERED THAT:

(1) The order of this court in the above captioned case dated May 8, 1991, is superseded by the instant order.

(2) Plaintiff's motion for Preliminary Injunction is GRANTED. Pending a full hearing on this matter, defendants, Township of Lawrence Park and Paul J. Jazenski are RESTRAINED, ENJOINED AND PROHIBITED from enforcing or attempt-

**362**

ing to enforce § 404.3 of the Lawrence Park Township Zoning Ordinance relative to political and/or campaign signs in any enforcement action which had not been instituted before May 8th, 1991, the date of the original order.

(3) Plaintiff shall give security in the sum of $1,000.00 pursuant to provisions of Fed.R.Civ.P. 65(c).