**WISCONSIN MANUFACTURERS & COMMERCE, WMC Issues Mobilization Council, Inc., ABC Corporation, and XYZ Corporation, Wisconsin corporations, Plaintiffs,**

**v.**

**STATE OF WISCONSIN ELECTIONS BOARD, Michael Brennan, David Halbrooks, Barbara Kranig, J. Curtis McKay, Gregory Paradise, Judd Stevenson, individually and in their official capacities as members of the State of**

Wisconsin Elections Board, Don Millis and Christine Wiseman, in their official capacities as members of the State of Wisconsin Elections Board, and Walter Dickey, John Niebler, and Kevin J. Kennedy, individually, Defendants.

AMERICANS FOR LIMITED TERMS, INC., a Delaware corporation, and ABC, a natural person, Plaintiffs,

v.

STATE OF WISCONSIN ELECTIONS BOARD, Michael Brennan, David Halbrooks, Barbara Kranig, J. Curtis McKay, Gregory Paradise, Judd Stevenson, individually and in their official capacities as members of the State of Wisconsin Elections Board, Don Millis and Christine Wiseman, in their official capacities as members of the State of Wisconsin Elections Board, and Walter Dickey and John Niebler, individually, Defendants.

Nos. 97–C–0288–C, 97–C–0306–C.

United States District Court, W.D. Wisconsin.

Sept. 25, 1997.

Raymond P. Taffora, Michael Best & Friedrich, Madison, WI, for Wisconsin Mfrs. & Commerce, WMC Issues Mobilization Council, XYZ Corp., ABC Corp.

Paul W. Schwarzenbart, Lee, Kilkelly, Paulson & Kabaker, Madison, WI, for Americans for Ltd. Terms, Inc., A.B.C.

Alan Lee, Asst. Atty. Gen., Madison, WI, for State of Wis. Elections Bd., Michael Brennan, Walter Dickey, J. Curtis McKay, David Halbrooks, Barbara Kranig, John Niebler, Gregory Paradise, Judd Stevenson, Kevin J. Kennedy, Don Millis, Christine Wiseman, State of Wis. Elections Bd.

Nola Hitchcock Cross, Brennan Center for Justice, New York, NY, for Lynn Adelman, Charles Chvala, William Dixon, Betty Gloudeman.

## OPINION AND ORDER

CRABB, District Judge.

These two consolidated civil actions for declaratory, injunctive and monetary relief

are before the court on five separate motions. Jurisdiction is present, 28 U.S.C. § 1331. Proposed interveners Adelman, Chvala, Gloudeman and Dixon have filed a motion to intervene and a motion to abstain. Defendants have submitted a separate motion to dismiss or abstain. Plaintiffs Americans for Term Limits, Inc. and ABC have filed a motion for summary judgment. A motion for judgment on the pleadings has been filed by all plaintiffs.

I conclude that abstention under the *Younger* doctrine is required because of the existence of ongoing state judicial proceedings in which important state interests are implicated and in which plaintiffs are afforded an adequate opportunity to raise their constitutional challenges. Therefore, defendants' motion to abstain will be granted. The decision to abstain is dispositive as to the entire action, making it unnecessary to address the merits of the other motions.

For the sole purpose of deciding this motion, I find from the pleadings that the facts are as follows.

### FACTS

Plaintiffs WMC Issues Mobilization Council and Wisconsin Manufacturers and Commerce are nonstock, nonprofit corporations with their principal places of business in Madison, Wisconsin. Wisconsin Manufacturers and Commerce provides financial support to the Issues Mobilization Council. Plaintiffs ABC Corporation and XYZ Corporation are each organized under Wisconsin law and have their principal places of business in Wisconsin. Although ABC and XYZ Corporations both provide financial support to the Issues Mobilization Council, only ABC is a member of Wisconsin Manufacturers and Commerce.

Plaintiff Americans for Limited Terms, Inc. is a nonstock, nonprofit corporation organized under the laws of Delaware, with its principal place of business in Evanston, Illinois. Americans for Limited Terms, Inc. is qualified as an exempt social welfare organization under 501(c)(4) of the Internal Revenue Code. Plaintiff ABC is a natural person residing in Wisconsin. ABC is a supporter of and contributor to Americans for Limited Terms, Inc.

Defendant State of Wisconsin Elections Board is an independent agency in the executive branch of the State of Wisconsin, created pursuant to Wis. Stat. § 15.61. The Board enforces certain statutory provisions governing elections and campaign financing set forth in Wis. Stat. Chs. 5–11. Defendant Kennedy is executive director of the Board; defendant Kranig is secretary; defendants Brennan, Halbrooks, McKay, Paradise and Stevenson are members. Defendants Dickey and Niebler were members of the Board during all times relevant to this action. After expiration of their terms on April 30, 1997, they were replaced by defendants Wiseman and Millis.

As stated in the Issues Mobilization Council's articles of incorporation, its purposes are to mobilize support in a variety of ways for public policies that will lead to greater economic opportunities, job creation and a higher quality of life for Wisconsin citizens. Since its creation in 1993, the Issues Mobilization Council has engaged in activities designed to educate the public on issues such as property tax, civil justice reform, expenditures for education, violence in the workplace and the voting records of incumbent legislators.

Beginning in the fall of 1996, the Issues Mobilization Council produced a series of radio, television, and direct mail advertisements about specific positions on specific public issues taken by certain members of the Wisconsin legislature. One such spot began airing on television on October 24, 1996, a few weeks before the general election. The audio portion of the advertisement informed viewers that State Senator Lynn Adelman has cost his constituents jobs by voting against curbs on frivolous lawsuits; made a career of putting the rights of criminals ahead of victims; and voted to deny employers the right to keep convicted felons out of the workplace. The spot closes by suggesting that viewers call Senator Adelman to "tell him honest working people have rights, too." A toll-free number is provided for this purpose.

During the fall of 1996, the Issues Mobilization Council produced similar television advertisements naming State Senator Charles Chvala and State Representatives David Plombon and Michael Wilder. On October 24, 1996, Adelman, Chvala, Plombon and Wilder filed complaints with the Board. All complaints alleged that these television advertisements violated Wisconsin election law. In addition, Adelman, Chvala, Plombon and Wilder brought actions in Milwaukee, Dane County and Eau Claire state circuit courts, and obtained temporary injunctions enjoining the Issues Mobilization Council from airing the disputed advertisements or any similar advertisement. After the state court of appeals refused to overturn these injunctions, three of the cases, *Dixon and Chvala v. WMC Issues Mobilization Council, Inc.* (96–CV–2498), *Gloudeman and Adelman v. WMC Issues Mobilization Council, Inc.* (96–CV–8317) and *Plombon et al. v. WMC Issues Mobilization Council, Inc.* (96–CV–0561) were consolidated before the Honorable Mark Frankel; the fourth case, *Travis v. Americans for Limited Terms, Inc.* (96–CV–2581), is pending before the Honorable Daniel Moser, all in the Circuit Court for Dane County, Wisconsin. On September 12, 1997, Judge Frankel entered an order dismissing the Issues Mobilization Council's counterclaim for declaratory relief, denying its motion to dismiss the plaintiffs' claim for declaratory relief on the ground of mootness, and denying its motion to dismiss plaintiffs' claims for a permanent injunction.

Americans for Term Limits, Inc. is a "grass roots" organization that does not accept contributions from business corporations or labor unions. The purpose of Americans for Term Limits, Inc. is set forth in its articles of incorporation. It includes promoting respect for the rule of law and limited government by advocating term limits for political incumbents at the local, state and federal levels. To carry out this purpose, Americans for Term Limits, Inc. occasionally disseminates information during campaigns involving candidates who oppose term limits. One such candidate, Wisconsin State Representative David Travis, was the subject of radio advertisements and a bulk mailing campaign coordinated by Americans for Term Limits, Inc. in the fall of 1996. An informational brochure distributed by the organization asks readers to "thank" Travis's opponent for supporting term limits and "demand" that Travis "change his anti-term limits position today." The companion radio advertisement makes no mention of Travis's opponent but urges listeners to "call" Travis and "remind" him that "the people want term limits." On November 1, 1996, Travis filed a complaint with the Board, alleging that these radio advertisements violated Wisconsin elections law because Americans for Term Limits, Inc. is not registered with the board as a political action committee.

On November 22, 1996, the Board consolidated the complaints filed against the Issues Mobilization Council and Americans for Term Units, Inc. By orders dated March 14 and 17, 1997, the Board found that both organizations had violated Wisconsin election law because the disputed advertisements constitute a form of advocacy in which only political action committees are allowed to engage. The Board ordered the Issues Mobilization Council and Americans for Term Limits, Inc. to comply with the registration and reporting requirements imposed by Wisconsin campaign financing law no later than April 15, 1997.

The Issues Mobilization Council and Americans for Term Units, Inc. initiated these suits on April 24 and April 29, respectively. One day later, on April 30, the Board voted to commence actions against both organizations to enforce compliance with its March 14 and 17 orders. The Board filed these actions on June 26 in the Circuit Court for Dane County, asking for an injunction requiring the Issues Mobilization Council and Americans for Term Limits, Inc. to comply with the appropriate registration and reporting requirements as well as forfeitures for each daily violation.

Both organizations would both like to continue engaging in activities that are the subject of the civil and administrative actions pending against them.

## OPINION

### A. *Standard of Review*

In deciding a motion to dismiss for failure to state a claim, a court must construe the

complaint liberally in favor of the plaintiff, taking as true all well-pleaded factual allegations and all reasonable inferences which may be drawn from them. *Leahy v. Board of Trustees of Community College Dist. No. 508,* 912 F.2d 917, 921 (7th Cir.1990). However, a court is not compelled to accept conclusory allegations concerning the legal effect of facts set out in the complaint. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996) (*citing Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir.1994)). A motion to dismiss should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Although all reasonable inferences are to be drawn in favor of the plaintiff, the complaint must set forth factual allegations sufficient to establish the elements that are crucial to recovery under plaintiffs claim. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984). Legal conclusions without factual support are not sufficient. *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985).

### B. *Wisconsin and Federal Campaign Financing Law*

■ Before addressing the merits of defendants' motion, I will provide a brief outline of the law forming the basis of the issues raised in this case. In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam), the United States Supreme Court held that state and federal campaign financing laws must employ two discrete analyses, the "express advocacy" and "major purpose" tests, to define the type of speech and type of group subject to regulatory oversight. The court drew a categorical distinction between express and issue advocacy. Spending and contribution limits and reporting requirements cannot be imposed on groups that engage exclusively in issue advocacy. The court stopped short of grounding this holding in the Constitution, explaining instead that it was crafted to avoid constitutional problems. *Brownsburg Area Patrons Affecting Change v. Baldwin,* 943 F.Supp. 975, 982 n. 3 (S.D.Ind.1996).

Addressing the process of separating express and issue advocacy, the *Buckley* court recognized that:

> the distinction between the discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and government actions. Not only do candidates campaign on the basis of their positions on various public issues, but campaigns themselves generate issues of public interest.

*Buckley,* 424 U.S. at 42, 96 S.Ct. at 646. Nevertheless, the court proceeded to define express advocacy as expenditures for communications "that expressly advocate the election or defeat of a clearly identified candidate." *Id.* at 80, 96 S.Ct. at 664. Issue advocacy, then, is the communication of opinions regarding public issues related to candidates or campaigns without expressly advocating the election or defeat of a particular candidate.

In a related case, *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), the Court established that certain not for profit corporations may engage in express advocacy, within limits. In *Massachusetts Citizens,* the Supreme Court held that "independent expenditures" made on behalf of a candidate by the plaintiff-corporation were a protected form of speech not subject to regulatory oversight, *id.* at 263, 107 S.Ct. at 630–631, and that a provision of the Federal Election Campaign Finance Act of 1971, 2 U.S.C. §§ 431–455, imposing registration and reporting requirements on all corporations making independent expenditures violated the First Amendment. The Supreme Court identified three characteristics of the plaintiff-corporation as significant in its holding: the corporation was (1) formed for the purpose of promoting political ideas, as opposed to political candidates or officeholders; (2) had no shareholders or others with a claim on its assets or earnings; and (3) was neither established by nor accepted contributions from a business corporation or a labor union. *Massachusetts Citizens,* 479 U.S. at 264, 107 S.Ct. at 631.

■ Under *Buckley*, 424 U.S. at 79, 96 S.Ct. at 663, spending and contribution limits and reporting requirements may be imposed on an organization only if the organization is either under the control of a political candidate or its "major purpose" is the nomination, election, or defeat of candidates for office. The "major purpose" of an organization may be shown by public statements of its purpose or by other means, "such as its expenditures in cash or in kind to or for other benefit of a particular candidate or candidates." *Federal Election Comm'n v. GOPAC, Inc.*, 917 F.Supp. 851 (D.D.C.1996).

Wisconsin passed its campaign financing laws in 1973, two years after the enactment of the Federal Election Campaign Finance Act. The Wisconsin laws closely resemble their federal analog. Under Wis. Stat. § 11.05(1), only "committees" and "political groups" are subject to political action committee reporting requirements. Under Wisconsin law, "committee" is defined as "any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts contributions, or makes disbursements, whether or not engaged in activities which are exclusively political...." Wis. Stat. § 11.01(4). In turn, a "disbursement," is "[a] purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value ... made for political purposes." Wis. Stat. § 11.01(7)(a)(1). The statute provides that "[a]n act is for 'political purposes' when it is done for the purpose of influencing the election or nomination for election of any individual to state or local office, for the purpose of influencing the recall from or retention in office of an individual holding a state or local office...." Wis. Stat. § 11.01(16). Following this general definition are two illustrative examples, of which only the first is relevant for the purpose of this discussion:

Acts which are for 'political purposes' include but are not limited to:

1. The making of a communication which expressly advocates the election, defeat, recall or retention of a clearly identified candidate or a particular vote at a referendum. *Id.*

All organizations fitting this patchwork definition of "committee" that make disbursements in excess of $25 in a calendar year must file a disclosure statement with the Board. Wis. Stat. § 11.05(1). Failure to do so renders an organization ineligible to make any such disbursements. Wis. Stat. § 11.12(1). Two exceptions exist. First, a committee is exempt from reporting requirements if it "does not anticipate ... making disbursements ... in excess of $1,000 and does not anticipate accepting any contribution or contributions from a single source ... exceeding $100 in that year...." Wis. Stat. § 11.05(2r). The second exception applies only to registered committees not organized primarily for political purposes. Such committees need disclose only disbursements that constitute express advocacy. Wis. Stat. § 11.06(2).

Plaintiffs contend that defendants have acted under the color of state law to deprive them of their constitutional rights to free speech and association guaranteed by the First Amendment of the United States Constitution. Plaintiffs ask this court to declare that the advertisements which are the subject of the administrative and state court forfeiture actions are not "express advocacy" and are not subject to regulation by defendants. They ask for all damages suffered as a result of these past and ongoing violations, including litigation costs and attorney fees. Finally, plaintiffs ask this court for an injunction enjoining defendants from enforcing any aspect of Wis. Stat. Ch. 11 against them.

### C. *Younger Abstention*

■ The order in which each of the five ripe motions is to be addressed as well as the consequence of abstention are dear "When there is an ongoing state proceeding, whether to abstain is the *first* question, and an affirmative answer brings the case to an end." *Greening v. Moran*, 953 F.2d 301, 304 (7th Cir.1992). The judicially-created abstention doctrines represent exceptions to the "virtually unflagging obligation [of federal courts] to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "the Supreme Court held that absent extraordinary circumstances, federal courts must abstain from enjoining ongoing state criminal proceedings." *Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290, 294 (7th Cir.1994). Notions of comity and federalism informed the Supreme Court's holding in *Younger.* Together, these concepts represent "a system in which there is sensitivity to the legitimate interest of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interest, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–751. Perhaps because *Younger* rests on such broad ideological footing, the doctrine has since expanded to encompass civil as well as criminal proceedings. A three-part test has evolved for determining whether *Younger* abstention is appropriate. The state proceedings must (1) be ongoing as well as judicial or judicial in nature; (2) implicate important state interests; and (3) afford an adequate opportunity to raise constitutional challenges. *Hogsett,* 43 F.3d at 295 (citing *Middlesex County Ethics Comm. v. Garden State Bar Assoc.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

■ Plaintiffs argue that no ongoing state proceedings existed at the time they filed these suits because they beat defendants in a race to the courthouse. They attempt to frame the administrative and civil actions set in motion by the October 24 complaints as two severable, separate proceedings, but the record supports the opposite conclusion. The orders issued by the Board on March 14 and 17 established an April 15 deadline for plaintiffs to comply with Wisconsin campaign financing law. At the time plaintiffs filed these federal lawsuits on April 24 and April 29, they knew that they were in violation of the March orders. They knew that the Board would meet the following day on April 30 and that it had the authority under Wis. Stat. § 11.60(4) to bring a forfeiture action against plaintiffs in state circuit court for failing to comply with the April 15 deadline. The state court action, filed by the Board in late June of 1997, marks a *continuation* of the proceedings begun in the fall of 1996; it does not create a new reference point for determining whether the underlying state proceeding is "ongoing." *See Nelson v. Murphy,* 44 F.3d 497, 501 (7th Cir.1995) (monthly treatment plans filed with state court by director of Illinois mental health facility for inmates found not guilty by reason of insanity represent continuations of original criminal prosecutions). The "core" of *Younger* is preserved by provisions such as Wis. Stat. § 11.60(4), which guarantees Wisconsin's right to litigate cases in its own courts. *Id.* That the Board is an administrative body is irrelevant. *Younger* applies to pending state administrative proceedings so long as they implicate important state interests. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 627–628, 106 S.Ct. 2718, 2722–2723, 91 L.Ed.2d 512 (1986); 17 James Moore et al., *Moore's Federal Practice* § 122.05[2][d] (3d ed. 1997) ("[O]nce state administrative proceedings have begun, federal court abstention is required if important state interests are at stake. The circuits all follow this rule.") (citations omitted).

■ The first requirement of *Younger* abstention is satisfied even if the administrative and state court forfeiture actions should be viewed as distinct. The principles of *Younger* apply in full force so long as the state proceedings are begun "before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291–2292, 45 L.Ed.2d 223 (1975)); *see also Moran,* 953 F.2d at 304–305. No proceedings of substance on the merits have taken place if the case has not progressed beyond the "embryonic stage." *Midkiff,* 467 U.S. at 238, 104 S.Ct. at 2328 (*quoting Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566–2567, 45 L.Ed.2d 648 (1975)). Two court of appeals cases elaborate on the meaning of this term. In *Ciotti v. County of Cook,* 712 F.2d 312 (7th Cir. 1983), a bookstore challenged the constitutionality of a Cook County adult use zoning

ordinance. After unsuccessfully moving to dismiss the case for lack of standing, the county filed an action against the federal plaintiff in state court for violation of the ordinance. The district court's opinion regarding standing did not move the case beyond an "embryonic stage" because it "was not a decision relating to the merits of the underlying issue in the case—the constitutionality of the ordinance." *Ciotti,* 712 F.2d at 314. A related case, *Mannheim Video, Inc. v. County of Cook,* 884 F.2d 1043 (7th Cir.1989), involved a similar challenge to the same zoning ordinance. At the time the plaintiff brought suit in federal court, it was defending a state action brought by the county for violation of building ordinances. The county responded to the federal case by filing a Rule 12(b)(6) motion to dismiss, which the district court granted with respect to the second count of the plaintiffs three-count complaint. The court stayed the third count and found that the first count stated a valid claim. After the district court issued this opinion, the county amended its state court complaint against the federal plaintiff to include allegations of violations of the adult use zoning ordinance. The court of appeals held that abstention under *Younger* was appropriate because the district court had not reached the merits of Mannheim's constitutional claims:

> As in *Ciotti,* apart from the district court's decision on the County's motion to dismiss the second count, "the record indicates no other proceedings—for instance, depositions taken, discovery completed, or briefs filed on the issues—that would suggest advancement toward a determination on the merits. The federal proceeding was still in an embryonic stage."

*Mannheim Video,* 884 F.2d at 1046 (quoting *Ciotti,* 712 F.2d at 314). At the time the Board filed its forfeiture action on June 26, 1997, this federal action was not only far from a determination on the merits, but had matured significantly less than the district court proceedings reviewed in *Ciotti* and *Mannheim Video.* This court had not issued any substantive orders or opinions, much less considered the justiciability or merit of individual claims. No substantive developments on the merits of plaintiffs' constitutional claims had taken place. The case was still in an embryonic stage.

The ongoing state proceedings also satisfy the second part of the *Younger* doctrine because they involve important state interests. *See Family Foundation, Inc. v. Brown,* 9 F.3d 1075, 1077 (4th Cir.1993) (indisputable that Virginia has compelling interest in preserving the integrity of its election process through enforcement of its own election laws) (citations omitted). The declaration of policy in Wis. Stat. Ch. 11 contains an unequivocal endorsement of this notion and is worth quoting at length:

> [The legislature] further finds that excessive spending on campaigns for public office jeopardizes the integrity of elections ... Campaign reports provide information which aids the public in fully understanding the public positions taken by a candidate or political organization. When the true source of support or extent of support is not fully disclosed, or when a candidate becomes overly dependent upon large private contributors, the democratic process is subjected to a potential corrupting influence. The legislature therefore finds that the state has a compelling interest in designing a system for fully disclosing contributions and disbursements made on behalf of every candidate for public office, and in placing reasonable limitations on such activities.

Wis. Stat. § 11.001. In *Brown v. Hartlage,* 456 U.S. 45, 52, 102 S.Ct. 1523, 1528, 71 L.Ed.2d 732 (1982), the Supreme Court affirmed the declaration of policy set forth in Wisconsin campaign financing law. "We begin our analysis of [Kentucky elections law] by acknowledging that the States have a legitimate interest in preserving the integrity of their electoral process." By insisting that only federal law and federal rights are at stake in this case, plaintiffs not only set a collision course with the Wisconsin legislature and the United States Supreme Court; they also ignore several less subtle points, not the least of which is all of Wis. Stat. Ch. 11. Whether ongoing state proceedings implicate an important state interest is not a function of identifying controlling legal authority. The inquiry encompasses a broader

set of parameters. Although plaintiffs see fit to dismiss Wisconsin campaign financing law in a rhetorical sleight of hand, even plaintiffs must acknowledge that elections do take place in Wisconsin and that the state could not continue to function effectively if its political process became overly corrupt.

The third part of the *Younger* doctrine is satisfied because both the administrative and state court proceedings afford plaintiffs an adequate opportunity to raise their constitutional challenges. Plaintiffs do not dispute this. Rather, they argue that the existence of plaintiffs in this action not named in the complaints originally filed with the Board renders *Younger* inapplicable. Although it is true that these "new" plaintiffs never had an opportunity to assert their rights in the administrative proceedings before the Board, *Younger* abstention extends to federal plaintiffs whose interests are "intertwined" with plaintiffs in pending state court proceedings. *See Hicks,* 422 U.S. at 348–349, 95 S.Ct. at 2291–2292; *Bickham v. Lashof,* 620 F.2d 1238, 1244 (7th Cir.1980) (interests of doctor and corporation in which he was sole shareholder not sufficiently intertwined to have required federal court abstention because of pending state court action brought against corporation when continued enforcement of state abortion law did great injury to privacy rights of doctor and his patients). Both sets of plaintiffs are represented by the same counsel, make the same allegations and ask for the same relief in their federal complaints. The presence of plaintiffs Wisconsin Manufacturers and Commerce, ABC and XYZ Corporations and ABC adds no significant legal or factual dimensions to the ongoing state proceedings that cannot be pursued adequately by plaintiffs Issues Mobilization Council and Americans for Term Limits, Inc. Given that the Board has named plaintiffs Wisconsin Manufacturers and Commerce, and ABC and XYZ Corporations in the forfeiture action against the Issues Mobilization Council, there can be no doubt that all plaintiffs presently before this court have the opportunity to represent their interests adequately. Although plaintiff ABC is not a defendant in the forfeiture proceeding brought against Americans for Term Limits, Inc., ABC may move for intervening or amicus status if ABC thinks that her interests are not being adequately represented by Americans for Term Limits, Inc.

Plaintiffs cite *Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311 (1st Cir.1992) as authority for their argument that *Younger* abstention should not apply to ABC. In *Rivera–Puig,* a journalist brought suit in federal court, challenging Rule 23(c) of the Puerto Rico Rules of Criminal Procedure, which closed preliminary hearings in felony cases unless the defendant requested otherwise. At the time the journalist filed this suit, a similar action had been brought by the newspaper for whom he worked and was pending before the Supreme Court of Puerto Rico. The court of appeals declined to apply the *Younger* doctrine, emphasizing repeatedly that the case before the Puerto Rican Supreme Court was not pending *against* the journalist or his employer but in fact had been brought by the newspaper. *Rivera–Puig,* 983 F.2d at 319–320. Thus, whether the interests of these two plaintiffs were intertwined was inconsequential. *Id.* at 319. In this case, the ongoing state proceedings at issue are pending *against* plaintiff Americans for Term Limits, Inc., depriving *Rivera–Puig* of any persuasive force.

Plaintiffs note correctly that application of the *Younger* doctrine is not mandatory. However, they overstate the district court's discretion to refrain from abstaining under *Younger* and exaggerate the circumstances that justify exercising this discretion. When the conditions for *Younger* are satisfied, as they are in this case, "abstention is not only permissible but expected." *Hogsett,* 43 F.3d at 294. The Court of Appeals for the Seventh Circuit recognizes three exceptions to the *Younger* doctrine. Abstention is not required if

(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) there is an extraordinarily pressing need for immediate equitable relief; or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions.

*Pincham v. Illinois Judicial Inquiry,* 872 F.2d 1341, 1349 (7th Cir.1989) (citations and

internal quotation marks omitted); *see also Jacobson v. Village of Northbrook Municipal Corp.*, 824 F.2d 567, 569–570 (7th Cir.1987). Contrary to plaintiffs' assertion, an additional category does not exist for cases in which the relief sought is "wholly prospective." IMC brief at 11. Nor is abstention under *Younger* "somewhat disfavored in the First Amendment context." Americans for Term Limits, Inc. brief at 5. To the extent that the district court may recognize either of these considerations as persuasive in declining to apply *Younger*, it must be because they fit within one of the three enumerated exceptions.

■■ In emphasizing the degree to which Wisconsin campaign financing law and defendants have infringed upon plaintiffs' free speech rights, plaintiffs suggest that they believe there is an extraordinarily pressing need for immediate equitable relief. The court of appeals rejected similar arguments in *Pincham*, 872 F.2d at 1342–1344, which involved a state appellate court justice charged with engaging in conduct prejudicial to the administration of justice. The charges stemmed from a speech delivered by the justice in which he urged all African Americans residing in Chicago to cast votes for incumbent Mayor Harold Washington. The justice filed an action in federal court seeking to enjoin the proceedings pending before the Illinois Courts Commission and Judicial Inquiry Board. After finding that abstention was appropriate under *Younger*, the court of appeals considered whether an extraordinarily pressing need for equitable relief existed:

> *Younger* itself disposes of Justice Pincham's argument in this case. In *Younger* it was determined that "a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." 401 U.S. at 51, 91 S.Ct. at 754. The mere presence of "political speech" has no effect upon this analysis. Because Justice Pincham alleges nothing more than that a single state judicial disciplinary proceeding has had a "chilling effect" on his free speech rights, he has failed to establish [the exception].

*Pincham*, 872 F.2d at 1350. For purpose of comparison, the court cited *Wooley v. Maynard*, 430 U.S. 705, 712, 97 S.Ct. 1428, 1434, 51 L.Ed.2d 752 (1977), in which three successive prosecutions undertaken against the same person in the span of five weeks warranted application of an exception to *Younger* abstention. Plaintiffs are the subject of two proceedings undertaken over the course of an eight month period. Indeed, the second action is a continuation of the first and only became necessary after plaintiffs chose not to comply with the Board's March orders. Beyond a general desire to continue engaging in some form of political advocacy, plaintiffs allege no facts from which this court could conclude that an extraordinarily pressing reason militates against the potential delay created by abstention.

Both parties discuss at length whether *Loftus v. Township of Lawrence Park*, 764 F.Supp. 354 (W.D.Pa.1991) provides any support for plaintiffs' suggestion that this court exercise its limited discretion to apply one of the exceptions to the *Younger* doctrine. *Loftus* involved a candidate for political office who was prosecuted in state court for violating a local zoning ordinance that prohibited residents from posting anything other than temporary real estate signs on their front lawns. While the case was on appeal, the candidate filed suit in federal court seeking to enjoin enforcement of the ordinance. Although the district court determined that it should abstain under *Younger*, the court issued an injunction enjoining prospective enforcement of the ordinance. The court reasoned that principles of comity and federalism would not be upset so long as its injunction did not annul or enjoin the state proceeding commenced for *past* violation of the ordinance. *Loftus*, 764 F.Supp. at 358. Furthermore, the pending appeal was "not certain to address the constitutional issues." *Id.* at 359. Two additional considerations of comparatively greater weight carried the most persuasive force in the court's decision to decline invoking *Younger*. The court saw a need to act swiftly because the plaintiff had filed his application for an injunction just three weeks before the primary election in which he was a candidate. Finally, the court feared that future enforcement of the

ordinance would exact a heavy toll on the upcoming primary, observing that facts particular to this election made action "more urgent" than in similar cases in which abstention was ordered. The court characterized lawn signs as the only cost-effective means available to candidates for reaching potential voters, describing the situation as "a small locale with an imminent election, campaigns which are run on a modest level with few funds, and candidates who can afford practically no other method of advancing their causes." *Loftus,* 764 F.Supp. at 359 (citations omitted).

Unlike the candidate in *Loftus,* plaintiffs can and did raise their constitutional challenges before the Board and may continue do so in the pending circuit court proceedings. The pleadings do not indicate either that immediate action must be taken by this court to insure that plaintiffs are not barred from participating in some impending political contest or that enforcement of Wisconsin campaign financing laws against plaintiffs will chill political speech in Wisconsin to the extent anticipated in *Loftus.*

I conclude that defendants' motion to abstain under the *Younger* doctrine should be granted because all three prerequisites for abstention are satisfied. The forfeiture action filed by defendants in state court is a continuation of the administrative proceedings begun before the Board in October 1996, well before plaintiffs filed these federal cases in April 1997. Even if the two underlying state actions cannot properly be viewed as continuations of one another, no proceedings of substance on the merits had taken place in this court at the time defendants brought their state court lawsuit. These ongoing state proceedings implicate important state interests, namely Wisconsin's ability to preserve the integrity of its electoral and political processes. Finally, the third condition of the *Younger* doctrine is established because plaintiffs have an adequate opportunity in the state court proceedings to raise their constitutional challenges. Although plaintiffs ABC Corporation, XYZ Corporation, and ABC were not parties to the original proceedings before the Board, their interests are intertwined with plaintiffs Issues Mobilization Council and Americans for Term Limits, Inc., leaving no doubt that the rights and interests of all plaintiffs will be adequately represented. Because plaintiffs fail to establish an extraordinarily pressing need for immediate equitable relief, this court will abstain under *Younger.*

## ORDER

IT IS ORDERED that the motion of defendants Brennan, Halbrooks, Kranig, McKay, Paradise, Stevenson, Kennedy, Dickey, Niebler, Wiseman, Millis and State of Wisconsin Elections Board to abstain is GRANTED because there are ongoing state proceedings implicating important state interests in which plaintiffs have an adequate opportunity to raise their constitutional challenges.